**The PEOPLE of the State of Colorado,
Plaintiff-Appellee,**

v.

**Roy Vincent MARTIN, Jr.,
Defendant-Appellant.**

**No. 81CA0005.**

Colorado Court of Appeals,
Div. III.

Sept. 1, 1983.

J.D. MacFarlane, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel Cantrick, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for plaintiff-appellee.

William M. Lederer, Colorado Springs, for defendant-appellant.

BERMAN, Judge.

Defendant appeals his convictions of aggravated robbery, conspiracy to commit aggravated robbery, possession of a weapon by a previous offender, crime of violence, and the sentence imposed for these crimes. We affirm.

On April 1, 1980, two black males robbed, at gunpoint, the three tellers at The Garden of the Gods bank in Colorado Springs of approximately ·$13,000. The robbers escaped in a grey and maroon sedan driven by a white female wearing a red bandanna. Witnesses in the bank described the robbers as young black males wearing face paint, denim jackets and pants, one with an off-white hat and one a rust or red colored hat. As the car drove away from the bank, two witnesses recorded the license plate of the car, and they immediately reported this information to the police.

Shortly after this report, a car matching the description with the reported license number was stopped on I–25 heading north. This car was driven by a white female wearing a red bandanna. After the driver exited, she ordered the defendant and another black male who had been lying on the floor of the car's back seat to get out of the car. Both of these men were wearing dark face paint. At this time, the officers observed a ripped paper sack filled with a sizeable amount of cash on the floor. Upon searching the car, the officers recovered approximately $13,000, some of which bore the bank's "bait money" serial numbers, two hats, one off-white and one rust colored, and two guns.

The two officers who assisted at the scene of the arrest testified at defendant's preliminary hearing. Upon a finding of probable cause, the defendant was bound over for trial.

A bifurcated trial was conducted whereby the jury first heard the aggravated robbery, conspiracy, and crime of violence counts. Subsequent to the reading of guilty verdicts on the above counts, the jury heard evidence regarding possession of a weapon by a previous offender. The jury was given a standard instruction on this latter offense and was dismissed to deliberate. Defense counsel then objected that he had not been given an opportunity to review the instruction prior to its submission to the jury, and he moved for and was denied a mistrial. The jury found defendant guilty of possession by a previous offender.

## I.

■ Defendant first contends on appeal that the trial court erred in binding him over after the preliminary hearing. However, once the defendant has been found guilty beyond a reasonable doubt, the issue of whether there was probable cause to bind him over after a preliminary hearing becomes moot. *People v. Horrocks,* 190 Colo. 501, 549 P.2d 400 (1976); *Kuypers v. District Court,* 188 Colo. 332, 534 P.2d 1204 (1975).

## II.

■ Defendant also urges this court to reverse because the court "repeatedly" refused to allow questioning of potential jurors regarding their knowledge of pre-trial publicity outside of the presence of the other jurors. To the contrary, we hold that the trial court conducted *voir dire* in a rational and fair manner.

The record reveals that the trial court first asked all the prospective jurors if they saw any news coverage of the case. Four replied that they did. The first two of these four were examined *in chambers* and stated that they did not remember many details. Only two prospective jurors who said they had seen some news coverage were examined in the presence of other jurors. Of these, neither remembered enough about the case to go into any details.

This case may be compared to *United States v. Liddy,* 509 F.2d 428 (D.C.Cir.1974), *cert. denied,* 420 U.S. 911, 95 S.Ct. 833, 42 L.Ed.2d 842 (1975). In *Liddy,* the D.C. Circuit, in affirming the conviction, wrote:

"The trial judge, after determining that virtually all of the veniremen had some knowledge of the case, did grant defend-

ants' request to the limited extent of conducting individual questioning of eight members of the array who had acknowledged exposure to some publicity. This individual questioning indicated that most knew little about the case, few remembered even a single detail, and none had formed an opinion as to the guilt or innocence of the defendants. The results of the individual examination thus served to verify prior responses to *en masse* questioning which indicated that few veniremen had formed an opinion regarding guilt or innocence. Under these circumstances, the trial judge acted within his broad discretion in abandoning individual questioning and continuing *voir dire* on an *en masse* basis."

Similarly, here, the court conducted *en masse* questioning, found there was little exposure to publicity among the prospective jurors, examined a few of these jurors individually and determined that none remembered even a single detail. Thus, under these circumstances, "the trial judge acted within his broad discretion in abandoning individual questioning and continuing *voir dire* on an *en masse* basis." *United States v. Liddy, supra.*

### III.

■ Defendant also argues that the trial court committed reversible error when it read the instruction regarding the charge of possession of a weapon by a previous offender to the jury without having tendered it to defense counsel for review. Although it would have been preferable to give counsel the opportunity to review the instruction, no contemporaneous objection was made. Therefore, we must determine whether failure to do so constitutes plain error. We hold that it does not.

Defendant does not argue on appeal that the instruction, as given, contained an erroneous statement of the law. To the contrary, the instruction mirrored the applicable statute, § 18–12–108, C.R.S.1973 (1978 Repl.Vol. 8), and was identical to the Model Jury Instruction in effect at the time. Colo.J.I.Crim. 34:6. *See also* Colo.J.I.-Crim.

34:07 (1983) (substantially similar). Thus, we do not view the failure to submit the instruction to defense counsel for review to be plain error. Crim.P. 52(b).

### IV.

■ Defendant next contends that the trial court erred in denying his motion for a mistrial because the jury saw the defendant confined in a holding cell in handcuffs. We disagree.

First, we decline to consider the issue of whether it was error to permit the jurors to see defendant while handcuffed because defense counsel failed to make a record on this issue. Thus, we have no way of knowing whether such an event took place, and we will not engage in speculation on appeal.

■ Second, we do not find that the jurors' view of the defendant while in the holding cell constitutes reversible error. Only if restraint of the defendant is unnecessary and prejudicial does such restraint constitute reversible error. *People v. Rael*, 199 Colo. 201, 612 P.2d 1095 (1980). Defendant has made no showing that confining defendant to a holding cell during court recesses was either unnecessary or prejudicial. Moreover, to predicate reversal upon denial of a motion for mistrial the defendant must establish that the trial court committed a gross abuse of its discretion. *People v. Hodges*, 624 P.2d 1308 (Colo.1981). We find no such abuse here.

### V.

■ Defendant argues in his supplemental brief that it was error to admit portions of a television newsreel as rebuttal evidence. We disagree.

The defendant himself testified that, when he was arrested, he was walking with a limp because of a painful foot infection. He also testified that he was wearing neither a stocking cap nor a gun holster but that the police later forced him to put on these items. The newsreel was then admitted on rebuttal to impeach the credibility of the defendant as to these statements. It clearly shows that the defendant was walk-

ing without a limp, and that he was wearing both a cap and a holster. Only those portions of the tape which were necessary to establish the above were shown to the jury. Therefore, the trial court properly exercised its discretion in allowing such rebuttal testimony. *People v. Johnson,* 189 Colo. 28, 536 P.2d 44 (1975).

### VI.

Defendant also contends that his 22-year sentence was improper because a co-defendant was sentenced to only six years. We disagree.

 There is no requirement that co-defendants be given equal sentences. *People v. Bruebaker,* 189 Colo. 219, 539 P.2d 1277 (1975). The record in this case reveals that the disparity in sentences was based upon consideration of proper factors. First, the defendant was convicted on eight counts, while his co-defendant pled guilty to and was convicted on only half of those counts. And, the court detailed seven extraordinary aggravating factors, many of which applied only to the defendant, including that the court was convinced that the defendant had lied on the stand, and that the defendant had been previously convicted of a felony involving use of a weapon. Thus, we hold that the disparity in sentences is justified and that defendant's sentence should stand.

Defendant's remaining contentions of error are either without merit or are unsupported by the record.

Judgment affirmed.

ENOCH, C.J., and TURSI, J., concur.