The **PEOPLE** of the State of Colorado, Plaintiff-Appellant,

v.

Karen Lynn **HALL**, Defendant-Appellee.

No. 84SA544.

Supreme Court of Colorado, En Banc.

Dec. 15, 1986.

Robert R. Gallagher, Jr., Dist. Atty., Catherine P. Adkisson, Deputy Dist. Atty., Littleton, for plaintiff-appellant.

Reynard, Booms & Piper, P.C., Robert Tabor Booms, Denver, for defendant-appellee.

ROVIRA, Justice.

Karen Lynn Hall was charged with two counts of distribution of a schedule IV controlled substance, a class 5 felony. § 12–22–312, 5 C.R.S. (1985 & 1986 Supp.); § 18–18–105(2), 8B C.R.S. (1986). Pursuant to Hall's pretrial motions, the trial court dismissed count one because of the failure of the police to keep contact with an informant, and dismissed count two for prejudice to Hall caused by the unreasonable delay in arresting her. The People appeal only the dismissal of count two. The appeal comes directly to this court pursuant to C.A.R. 4(b)(2) and section 16–12–102(1), 8A C.R.S. (1986). We affirm.

## I.

The testimony of Hall at the motions hearing shows that sometime prior to June 18, 1982, she was contacted by an acquaintance she knew as "Lafayette." He was, in fact, James H. Anderson, a police informant. "Lafayette" told Hall that he was going out of town and had some things he wished Hall to look after while he was gone. He gave Hall a bag that contained a large quantity of Valium tablets, a schedule IV controlled substance.

On June 18, 1982, "Lafayette" called Hall and said he had found someone who wished to buy a portion of the Valium and instructed Hall to bring it to an arranged meeting in the "buyer's" car. The "buyer" was actually undercover police officer John Howe. At the meeting, Hall and Howe sat in the front seat of the car, and "Lafayette" was in the back seat. Hall gave a quantity of Valium tablets to Howe, who gave her money in return. Later, Hall gave "Lafayette" the money.

Over the next three weeks, Howe called Hall several times in an attempt to arrange a purchase of the remaining Valium. Hall was not always available when Howe called, so messages were taken by Vernon Taylor, who was her roommate at the time. A neighbor also either took or knew of the messages. When contact was made, she refused to sell the Valium to Howe because it did not belong to her, but belonged to "Lafayette." At some point, "Lafayette" contacted Hall, and when he was told of the calls from Howe, he encouraged Hall to go through with the sale.

When Howe next called Hall, a meeting was arranged for July 9, 1982. After the sale was completed, Howe identified himself as a police officer and Hall was arrested. No charges were filed against Hall, and she was released that same day, but instructed by Howe not to leave the state as he might have some more questions for her. Howe called Hall a few days later and asked if she had any names or help for him; she said she did not. That was the last Hall heard from Howe for nearly two years.

Hall moved during the month of October, 1982. She filed change of address forms with the post office, the department of motor vehicles, and her bank. Her phone number remained unchanged.

On October 8, 1982, an information was filed against Hall alleging two counts of a sale of a controlled substance. A summons was issued on the same day. Service of

the summons was unsuccessfully attempted once. An arrest warrant for Hall was issued on November 29, 1982.

Hall was unaware of the information, summons, or arrest warrant until May of 1984, when an employment background check revealed the outstanding arrest warrant. Hall immediately made arrangements to turn herself in. She waived her right to a preliminary hearing and pled not guilty to both counts on August 14, 1984.

Hall then filed a Motion to Dismiss for Failure to Maintain Contact with the People's Informant and a Motion to Dismiss for Unreasonable Delay in Arresting the Defendant. After a hearing on November 14, 1984, the first motion was granted as to count one (the June 18, 1982, transaction) because the People had lost contact with "Lafayette," who was an eye/ear witness to that event.

The unreasonable delay motion was granted as to count two (the July 9, 1982, transaction). The court found,

> that the Defendant has been prejudiced by the delay. She has lost her ability to contact ["Lafayette"], as have the [P]eople. She has lost her ability to contact Vernon Taylor. She has lost her ability to contact her neighbor.... I think this case goes a step beyond most cases in Colorado that I am aware of, in that the [P]eople have not intentionally done something to prejudice the Defendant, but the Defendant has clearly been prejudiced....[1]

The People appeal only the dismissal of count two. Since the trial court found that the prearrest delay would be prejudicial to Hall's right to a fair trial, and there is evidence in the record to support such a finding, we affirm the dismissal.

## II.

■ Unlike the right to a speedy trial, there is no constitutional right to a speedy arrest. *People ex rel. Coca v. District*

*Court,* 187 Colo. 280, 530 P.2d 958 (1975). However, a point can be reached where the delay is so great that the prejudice to the defendant caused by it—due to faded memories of parties and witnesses, loss of contact with witnesses, and loss of documents—becomes so great that due process and fundamental fairness require that the charges be dismissed. *People v. Hutchinson,* 192 Colo. 204, 557 P.2d 376 (1976).

This court has recognized "certain key factors" to be examined in this inquiry, which include: (1) loss of defense witnesses; (2) whether the delay was purposeful and intended to prejudice the defendant; (3) the kind and quantum of evidence available to the prosecution; and (4) general considerations of justice and fair play. *Coca,* 187 Colo. at 285, 530 P.2d at 960. This list is not exhaustive. *Id.* at 285, 530 P.2d at 960.

■ Applying these factors, the trial court concluded that the delay was not purposeful and that the prosecution did have a strong case. However, the court also noted that the police had failed to keep in touch with "Lafayette," and Hall could not locate him despite her best efforts. His testimony regarding the conversation between Hall and Howe at the first sale, the phone calls from Howe, and his encouragement of Hall regarding the second transaction would be helpful to Hall in the preparation of her defense.

The trial court observed further that Hall's roommate, who had taken several phone messages from Howe, could no longer be found. Hall had also lost contact with a witness who was aware of the phone calls from Howe. The court found that these witnesses, as well as "Lafayette," would be helpful in examining the credibility of Howe, the state's primary witness.

Finally, the trial court considered the fact that the police originally released Hall for their own purposes—they wished to use her as an informant. It was obvious within

---

**1.** The trial court also stated that it would have dismissed count one for unreasonable delay had it not already been dismissed due to the failure

of the police to keep in touch with their informant.

a week that she would not cooperate. The court noted that had Hall not inadvertently discovered the warrant, the case probably never would have been prosecuted.

After considering all these factors, the court found that Hall had been prejudiced by the delay due to the loss of witnesses. It further found that the reason for the delay was sheer lack of interest. Under these circumstances, it held, the prejudice caused by the unreasonable delay warranted dismissal of the charges.

We emphasize that the evidentiary facts of this case do not require dismissal as a matter of law. However, the trial court applied the correct test and weighed the relevant factors in concluding that the defendant was so substantially prejudiced by the delay as to result in a denial of due process. Since its findings of prejudice brought about by the unreasonable delay are supported by the record, they are entitled to deference.

The trial court's dismissal of count two is affirmed.

VOLLACK, J., dissents.

VOLLACK, Justice, dissenting:

The majority opinion concludes that because the trial court applied the correct test and weighed the relevant factors, the trial court did not abuse its discretion in ruling that the prejudice caused by the unreasonable delay warranted dismissal of the charges. I do not believe the trial court applied the correct test and, therefore, I respectfully dissent.

The majority cites *People v. Hutchinson,* 192 Colo. 204, 557 P.2d 376 (1976), for the proposition that:

> [A] point can be reached where the delay is so great that the prejudice to the defendant caused by it—due to faded memories of parties and witnesses, loss of contact with witnesses, and loss of documents—becomes so great that due process and fundamental fairness require that the charges be dismissed.

Majority op. at 375. The majority also cites *People ex rel. Coca v. District Court,*

187 Colo. 280, 530 P.2d 958 (1975), for certain key factors which we have recognized as applicable to an inquiry into whether delay in arresting a defendant warrants dismissal. I do not disagree with the partial statement of law contained in either one of the authorities cited by the majority. However, in *People v. Hutchinson,* we also held that "[a] showing of *specific prejudice* is required." 192 Colo. at 206, 557 P.2d at 377 (emphasis added). We also stated that "mere *conjecture* by the trial court" was an insufficient basis to find actual prejudice by the delay in arrest. *Id.* (emphasis added). We did state in *Hutchinson,* however, that an allegation that a potential key defense witness might no longer be available to testify because of a *"purposeful"* delay by the state, "if true, *might* be sufficiently prejudicial to the defendant to require dismissal of his charges." *Id.* at 206–07, 557 P.2d at 377 (emphasis added).

The majority opinion correctly notes that "the trial court concluded that the delay was not purposeful and that the prosecution did have a strong case." Majority op. at 375. Thus, the "purposeful" element we set forth in *Hutchinson* has not been satisfied. More important, however, is the requirement of "specific prejudice." The trial court stated in its findings pertaining to the unavailability of certain witnesses, that "[t]heir absence *might* in fact affect the defense's ability both to prepare for trial and to present defenses at trial." (Emphasis added.) The court undermines its own conjecture by finding that "I agree with the statement of the district attorney that it doesn't sound as if the testimony of those witnesses would be persuasive to the Court as far as defense." The trial court also found:

> [t]he transaction occurred between the two of them [the defendant and the police officer] and the *informant was not present.* Although the Defendant may be prejudiced in her inability to raise certain defenses as they relate to Count 2, because of the absence of the informant and because of the people's lack of

reasonable effort to maintain contact with the informant, becuase [sic] that informant has a more peripheral involvement as to Count No. 2, he is not an eye or ear witness and is not centrally involved with the setting up or the carrying out of the transaction....

(Emphasis added.)

For the foregoing reasons, I would hold that the trial court did not apply the correct test or weigh the relevant factors, and that count two of the information filed against the defendant should be reinstated.