**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Roy A. MELANSON, Defendant–Appellant.**

**No. 93CA1777.**

Colorado Court of Appeals, Div. IV.

Aug. 8, 1996.

As Modified on Denial of Rehearing Oct. 10, 1996.

Certiorari Denied June 2, 1997.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Laurie A. Booras, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David Vela, Colorado State Public Defender, Elizabeth Griffin, Thomas K. Carberry, Deputy State Public Defenders, Denver, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

In a prosecution premised on the disappearance of a woman in 1974, defendant, Roy A. Melanson, appeals from a judgment of conviction entered on a jury verdict finding him guilty of first degree murder. We affirm.

Testimony at the trial in August 1993 revealed the following facts. On August 30, 1974, defendant and an acquaintance were driving toward Gunnison, Colorado, when they experienced car trouble. They were picked up by the victim, a 25–year–old woman who was preparing for a five-day backpacking and photography trip. The acquaintance was dropped off at a bar, and the victim and defendant proceeded to a different location.

On September 3, 1974, the victim's mother reported to police that her daughter was missing. An extensive search of the Gunnison and Crested Butte areas failed to uncover either the victim or her car. However, defendant's acquaintance informed the police that he had seen the woman with defendant several days earlier. Defendant later arrived at a friend's house in Gunnison driving the victim's car.

Thereafter, defendant left Colorado in the victim's car, pawned a backpack and sleeping bag in Kansas, and pawned various other items in Iowa. Defendant later abandoned the victim's car in Texas and, with another acquaintance, drove back to Pueblo, where he pawned a camera and other photography equipment.

On September 12, 1974, defendant and this acquaintance were stopped by the police in Pueblo based on a tip from an anonymous informant that they appeared to be selling drugs at a local high school. They were allowed to leave after brief questioning. However, after a computer search revealed an outstanding warrant for defendant's ar-

rest in Texas, the police located him and his acquaintance at a nearby motel.

The acquaintance consented to a search of his car, and, as a result of the search, the police discovered keys to the victim's car, a gas card belonging to the victim, and an insurance card with the name of the victim's father. The police questioned defendant at the Pueblo police station regarding his relationship with the victim. Defendant denied ever driving with the victim or being a passenger in her car, but stated that he had once met her. Defendant then requested a lawyer.

The next day, while meeting with an FBI agent, defendant admitted that the victim had given him and an acquaintance a ride in her car. However, he stated that he and the victim had gone to a bar and from there he had stolen her car, left the Gunnison area, and eventually abandoned the car in Texas. Defendant was not charged with murder at that time, but was taken to the Gunnison county jail on unrelated charges where he was held until March 1975.

In July 1979, a scalp with hair tied in braids was found near a creek in Gunnison. Although the police suspected that it was the victim's hair, a search of the area where it was discovered revealed no other evidence.

There were no further developments until August 1991, when an investigator in the Gunnison County sheriff's department realized that the police still had a hairbrush that had belonged to the victim. The investigator sent the brush, along with the scalp and hair sample found in 1979, to the Colorado Bureau of Investigation (CBI) for comparison. The CBI determined that the hair samples matched.

In April 1992, defendant was arrested and charged with first degree murder. Four months later, a new search of the area in which the scalp had been found revealed a skull with gold dental work, some thread, buttons, a zipper, and a brassiere. In addition, a hiking boot was discovered with a skeletal foot inside it. A dentist identified the teeth and dental work as the victim's and

an odontologist confirmed that the skull was the victim's.

The conviction at issue here followed.

## I. Speedy Trial/Delay in Prosecution

Defendant first contends that the charges against him should be dismissed because he was denied his right to speedy trial and due process of law by the prosecution's delay in charging him with murder. We do not agree.

■ The right to a speedy trial guaranteed by Colo. Const. art. II, § 16 and the Sixth Amendment attaches with the filing of a formal charge, *People v. Chavez*, 779 P.2d 375 (Colo.1989), or with the arrest and holding of a defendant to answer a criminal charge. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). That right, however, does not include the right to a speedy arrest or indictment. *People v. Hall*, 729 P.2d 373 (Colo.1986).

■ First, we reject defendant's contention that his speedy trial rights attached in September 1974 when he was held on unrelated charges. Here, although defendant was questioned by police in 1974, his speedy trial rights did not attach until April 1992 when formal charges were filed. He was tried in August 1993, and therefore, we conclude no speedy trial violation occurred.

■ Second, we disagree with defendant's contention that his due process rights were violated by the delay in prosecution. A point may be reached at which the delay in prosecution is so great that considerations of due process and fundamental fairness require that the charges be dismissed. *People v. Hutchinson*, 192 Colo. 204, 557 P.2d 376 (1976).

■ In determining whether a delayed prosecution has resulted in a denial of due process, a court must examine certain key factors, including: (1) loss of defense witnesses; (2) whether the delay was purposeful and intended to prejudice the defendant; (3) the kind and quantum of evidence available to the prosecution; and (4) general considerations of justice and fair play. *People v. Hall, supra.*

Based on our review of the record, we find that the trial court acted within its discretion in concluding that no violation of due process occurred as a result of the delay.

As to the first element of the test, five potential defense witnesses were either deceased or could not be located. However, the trial court found that two of the deceased witnesses would not have been helpful to the defense. Had they been alive, they could only have testified as to inculpatory statements of the defendant and to his possession of the victim's property.

Although two of the missing witnesses had previously stated they had seen the victim after the date on which she was purportedly killed, the trial court concluded that their statements were suspect because the witnesses could not speak English and the officer who prepared their statements spoke very little Spanish. Indeed, that officer testified that the dates noted in the statements could have been inaccurate by as much as two weeks.

The trial court also found that the third deceased witness had offered statements which amounted to nothing more than speculation on a case that had received substantial media coverage. He was not an eyewitness and did not claim to know either the victim or the defendant. Therefore, this witness would not have been helpful to the defense.

As the trial court noted, the greatest impairment to defendant would have been the faded memories of those witnesses available to testify. However, there existed numerous documents and statements from those witnesses that could assist them in refreshing their memories. Thus, the trial court correctly determined that the loss of defense witnesses, overall, helped rather than hurt the defendant.

In regard to the second element of the *Hall* test, while the trial court found some negligence on the part of the sheriff's department in collecting and comparing evidence, it also found that the delay in prosecuting was not purposeful or intended to prejudice the defendant. Further, even if the sheriff had matched scalp hairs with hairs from the victim's hairbrush in 1979, that match would not have positively identified the scalp as the victim's or further implicated defendant.

As the trial court noted, charges were not brought sooner because police and prosecutors wanted to find the victim's body and believed that no conviction would result without it. Thus, we agree that the investigative delay was not purposeful or intended to prejudice defendant. *See People v. Small*, 631 P.2d 148 (Colo.), *cert. denied*, 454 U.S. 1101, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981) (when the government takes time before seeking an indictment for purposes of conducting further criminal investigation, fundamental fairness is not violated unless this procedure shocks the community's sense of fair play and decency).

As to the third *Hall* element, the trial court found that the evidence available to the prosecution was the same in 1979 as it was when defendant was charged in 1992. While this fact alone might suggest an unreasonable delay, the prosecution also was legitimately concerned about proceeding to trial without the victim's body. This concern was justified because the prosecution would have had a significantly weaker case without the identification of the victim's remains. *See People v. Small, supra.*

Also, the trial court found that the interests of justice and fair play did not warrant the dismissal of the charges against defendant. We agree. As the trial court noted, although statutes of limitations exist to guard against the prejudice of stale prosecutions, there is no statute of limitations for first degree murder because of its grave and heinous nature. *See* § 16–5–401, C.R.S. (1995 Cum.Supp.).

Finally, because the list set forth in *People v. Hall, supra*, is not exhaustive, *see People ex rel. Coca v. District Court*, 187 Colo. 280, 530 P.2d 958 (1975), we conclude that it is appropriate to consider the fact that the victim's body was discovered approximately four months after defendant was charged, but almost a year before the start of trial. The prosecution had delayed charging defendant in hopes that it would find the body because it was critical to the identification of the victim at trial. Moreover, defendant has not alleged here that he was unfairly preju-

diced by the passage of time between the filing of charges against him and the discovery of the victim's body.

In light of all these circumstances, we conclude the trial court did not abuse its discretion in determining that no violation of fundamental fairness or due process occurred.

## II. Suppression of Statements to FBI

Defendant next contends, and the People concede, that the trial court erred in not suppressing statements he made to the FBI agent in 1974 after exercising his right to counsel. We agree that those statements should have been suppressed but nevertheless conclude that this error was harmless under the circumstances here.

Under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), if an accused indicates a desire to remain silent, any interrogation by police must cease, and if the accused requests counsel, interrogation must cease until an attorney is present. In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the court further held that all interrogation must cease on an accused's request for counsel until counsel is present or until the accused initiates further communication with police.

Here, defendant was properly advised of his rights prior to his initial interrogation on September 12, 1974, and he stated at that time that he wanted to talk with law enforcement officers. However, when defendant later indicated a desire to speak with an attorney, the interrogation ceased.

The next day, defendant gave several statements to the FBI agent that contradicted his earlier statements about his contact with the victim. Based upon conflicting evidence, the trial court found that defendant had not initiated the meeting.

█ Thus, the trial court concluded that the questioning by the FBI agent violated defendant's right to counsel under *Edwards v. Arizona, supra.* However, relying on *Solem v. Stumes,* 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984), the court further determined that *Edwards* should not be applied retroactively.

Defendant asserts, and the People concur, that this was error. *Solem, supra,* held only that *Edwards* did not apply retroactively to collateral reviews of final convictions. Although the FBI interrogation occurred seven years prior to the decision in *Edwards,* defendant was not charged until 1992, 11 years after that case was decided. Thus, the trial court should have followed *Shea v. Louisiana,* 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985), which held that *Edwards* applies retroactively to cases that were pending on direct appeal in a state court at the time *Edwards* was decided.

█ In cases of trial error involving the constitutional right to counsel, reversal is required unless the appellate court believes that the error was harmless beyond a reasonable doubt. *Key v. People,* 865 P.2d 822 (Colo.1994). In making that determination, an appellate court should consider a number of factors, including the importance of the statements to the prosecution's case, whether the statements were cumulative, and the overall strength of the prosecution's case. *Merritt v. People,* 842 P.2d 162 (Colo.1992).

Here, while defendant claims that his statements to the FBI agent were inculpatory because they contradicted earlier accounts of his contact with the victim, those statements were also exculpatory in that they provided an alternative to murder to explain why he had been driving the victim's car and was in possession of her personal items. Indeed, rather than establishing a connection between defendant and the victim, his statements provided him with a defense.

Further, in light of our conclusions below affirming the trial court's rulings on various other evidentiary matters, admission of these statements was harmless. The evidence admitted at trial sufficiently linked defendant to the victim and the prosecution met its burden by demonstrating that defendant's statements to the FBI agent did not contribute to his conviction. *See Merritt v. People, supra.* Accordingly, we conclude that the trial court's error in admitting the statements made to the FBI agent was harmless beyond a reasonable doubt.

## III. Investigatory Stop

Defendant also asserts that the investigatory stop by the Pueblo police in September 1974 was improper and that, therefore, all evidence obtained as a result of that stop should have been suppressed. We are not persuaded.

Consistent with Fourth Amendment guarantees, police officers may require drivers of motor vehicles to stop and respond to investigatory questions if: (1) the officers have a reasonable suspicion that the individual has committed or is about to commit a crime; (2) the purpose of the detention is reasonable; and (3) the detention itself is reasonable in light of the purpose for the investigatory stop. *People v. Weston,* 869 P.2d 1293 (Colo.1994).

An officer's suspicion is "reasonable" when it has an articulable and specific basis in fact. The relevant inquiry is whether the specific facts known to the officer, as well as the rational inferences from these facts, would support a reasonable suspicion of criminal activity so as to justify intrusion into the defendant's personal security. *People v. Garcia,* 789 P.2d 190 (Colo.1990).

An anonymous tip, standing alone, lacks sufficient indicia of reliability to establish the reasonable suspicion needed to support an investigatory stop. *People v. Contreras,* 780 P.2d 552 (Colo.1989). However, information obtained from an anonymous tip, when considered under the totality of the circumstances, may warrant an investigatory stop if it is verified by sufficient independent corroborating evidence of possible criminal activity. *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *People v. George,* 914 P.2d 367 (Colo.1996).

Here, an anonymous telephone caller informed police that an older, white Cadillac with out-of-state plates was parked by a local public high school and that the activities of the occupants of the car and of the students nearby indicated possible drug transactions. The caller also provided the license plate number of the car.

At approximately one p.m., this information was verified by an officer who witnessed a car meeting the description reported pulling away from the schoolyard. The officer stopped the car several blocks away, and briefly questioned defendant, who was driving, and his passenger, the owner of the car. The officer then attempted to verify the registration and ownership of the vehicle but, because he was unable to get a timely response from the police communication center, allowed them to leave.

Soon thereafter, the officer learned of an outstanding Texas arrest warrant against defendant for aggravated rape. The police located the Cadillac at a nearby motel and arrested defendant. After the Cadillac owner consented to a search, the police found several items belonging to the victim.

Under these circumstances, the officers had reasonable suspicion to stop the car. Each of the facts provided by the anonymous caller was corroborated by the officers when they arrived at the scene. *See People v. Villiard,* 679 P.2d 593 (Colo.1984) (innocent details of informant's report may provide corroboration). Also, the anonymous caller had knowledge of the events that were occurring from personal observation. *Cf. People v. Garcia, supra* (stop found unreasonable based, in part, on fact that anonymous informant did not reveal any basis for knowledge of the information given).

Furthermore, the circumstance of two men interacting with students in the early afternoon without anyone entering or leaving the car was not the type of commonplace and unremarkable event that was found insufficient to justify an investigatory encounter in *People v. George, supra.*

Thus, the facts known to the officers at the time of the stop, along with the reasonable inferences drawn from those facts, provided a reasonable and articulable basis to support the stop. *See People v. Savage,* 698 P.2d 1330 (Colo.1985).

Furthermore, the total time that the occupants of the car were detained was between five and ten minutes. Such a brief and cursory detention was not unreasonable. *See People v. Contreras, supra.*

## IV. Imposition of Restraints at Trial

Next, defendant contends that the trial court deprived him of his right to be present and confront witnesses, his right to presumption of innocence, and his right to testify by ordering that he be physically restrained during trial by means of a remotely activated control belt ("stun" belt). We do not agree.

The presumption of innocence requires that every defendant be brought before the court with the appearance, dignity, and self-respect of a free and innocent person, except as is otherwise required for the safety and decorum of the court. *People v. Dillon*, 655 P.2d 841 (Colo.1982). Thus, only those restraints are permitted which the court determines, in its discretion, are necessary to ensure that defendant remains in custody, will not endanger court personnel or others in the courtroom, and will not disrupt the trial. *Lucero v. Lundquist*, 196 Colo. 95, 580 P.2d 1245 (1978).

Where, as here, a defendant has been accused of a violent crime, public safety may require that physical restraints be imposed. *See Duckett v. Godinez*, 67 F.3d 734 (9th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1549, 134 L.Ed.2d 651 (1996) (court must be persuaded that some measure is needed to maintain security of the courtroom); *see also People v. Garcia*, 627 P.2d 255 (Colo.App.1980). In such instances, however, reasonable efforts must be made to prevent jurors from seeing the restraints, *People v. Garcia*, *supra*, and the court should pursue the least restrictive means available. *Duckett v. Godinez*, *supra*. Only if restraint of the defendant is unnecessary and prejudicial does such restraint constitute reversible error. *People v. Martin*, 670 P.2d 22 (Colo. App.1983).

The determination of appropriate restraints is within the trial court's discretion and will not be reversed absent an abuse of that discretion. *See Morgan v. Bunnell*, 24 F.3d 49 (9th Cir.1994) (trial court has wide discretion to decide whether a defendant who has a propensity for violence poses a security risk and warrants increased security mea-sures); *People v. Tafoya*, 703 P.2d 663 (Colo. App.1985).

Here, the trial court determined that security measures were necessary to ensure the safety of everyone in the courtroom. In so ruling, the court specifically noted defendant's history of violent crimes, that until being extradited to Colorado for purposes of this trial defendant was incarcerated in Kentucky for · a violent felony, and that the charge in the present case was first degree murder.

As a method of restraint, the People proposed the "stun" belt, a remotely activated device that is worn by a defendant around the waist and contains enough amperage to immobilize a person temporarily and cause muscular weakness for approximately 30–45 minutes. The device is not lethal and does not cause unconsciousness.

After hearing testimony· regarding the operation of the stun belt and a test of the belt conducted on one of the officers, the trial court concluded that, because it would remain hidden and obviated the need for armed guards, the belt was the least obtrusive way of ensuring courtroom safety and of preserving the presumption of defendant's innocence and the appearance of his dignity.

· Moreover, in an effort to eliminate possible prejudice or harm to the defendant, the court ordered ample precautionary measures including that defendant be provided with a sport coat large enough to cover the belt completely.

In our view, the trial court's decision that the physical restraint of defendant was necessary was not an abuse of its discretion. Although not all convicted felons are so dangerous and violent that they must be restrained at trial, *see Lemons v. Skidmore*, 985 F.2d 354 (7th Cir.1993), the court here set forth several reasons for the use of restraints and took extensive measures to guard against prejudice by the jury.

Defendant nevertheless asserts that, because he had a reasonable fear of the belt that affected his mental faculties, he could not participate fully and meaningfully in his trial, and he was therefore forced not to attend the trial, which violated his rights to

presence, to confrontation, and to testify. We are not persuaded.

Although the psychological effect or embarrassment of a defendant may be a factor in determining whether a security measure is appropriate, *see Eaddy v. People,* 115 Colo. 488, 174 P.2d 717 (1946), we conclude that the trial court here took appropriate steps here to assuage those concerns.

Testimony revealed that the belt was activated only after a precise and deliberate action by the person controlling it. Further, the court ordered that all officers controlling the belt provide an affidavit or affirmation that they were trained in its proper operation. Thus, there was no realistic chance that the belt would be accidentally triggered. We also note that defendant wore the belt 11 times before trial without incident.

Therefore, we conclude that the trial court did not abuse its discretion in ordering defendant to wear the stun belt and that its use did not deprive defendant of any of his rights.

## V. Prosecutor's Opening Statement

Defendant further contends that the trial court erred in denying his motion for a mistrial based on remarks made during the prosecutor's opening statement. We disagree.

### A.

■ A prosecutor's opening statement is limited to the evidence that will be adduced at trial. *People v. Hernandez,* 829 P.2d 394 (Colo.App.1991). Remarks later proven unsupported by the evidence will ordinarily constitute reversible error if there has been an affirmative showing of bad faith and manifest prejudice. *People v. Jacobs,* 179 Colo. 182, 499 P.2d 615 (1972).

■ Here, the prosecutor indicated during his opening statement that two inmates who had been incarcerated with defendant in Kentucky would testify as to statements that defendant had made to them about certain methods of disposing of dead bodies. During trial, however, the prosecutor learned for the first time of a letter that would have effec-

tively impeached the credibility of the two inmates. Thus, he decided to cease the questioning he had begun of one inmate and not to call the other one at all.

Because the prosecutor did not learn of the letter until he had already begun questioning one of the inmates, we find no evidence of bad faith. Hence, we conclude that the remarks made during opening statement did not constitute reversible error, and the trial court properly denied defendant's motion for a mistrial. *See People v. Collins,* 730 P.2d 293 (Colo.1986) (mistrial warranted only in extreme circumstances).

### B.

■ We also reject defendant's alternative assertion that the trial court should have given the jury his tendered cautionary instruction regarding the prosecutor's remarks.

■ The form of jury instructions given at trial is within the sound discretion of the trial court. *People v. Ridenour,* 878 P.2d 23 (Colo.App.1994).

Here, defendant tendered a curative instruction that would have reminded the jury of the prosecution's intent to have the two inmates testify, revealed the existence and content of the letter disclosed by defendant during an in camera conference, and finally, instructed the jury to disregard the prosecution's reference to the inmate's anticipated testimony.

We conclude that the trial court acted within its discretion in refusing to give this instruction. First, the instruction referred to facts not in evidence. Also, we agree with the trial court that this instruction would have only highlighted the challenged portion of the prosecutor's opening statement and was therefore unnecessary.

### VI. *Curtis* Advisement

■ Defendant also contends that the trial court erred in not establishing on the record that he voluntarily waived his right to testify. We disagree.

The trial court's responsibility under *People v. Curtis,* 681 P.2d 504 (Colo.1984) is

limited to advising defendant of the right to testify and the consequences of doing so. *Curtis* does not establish a rigid requirement of inquiry by the court to determine whether the waiver is truly voluntary. *Roelker v. People,* 804 P.2d 1336 (Colo.1991); *see also Tyler v. People,* 847 P.2d 140 (Colo.1993) (effective waiver found, although no explicit reference in the record that defendant waived right to testify).

Here, the record reveals that the trial court properly advised defendant of his right to testify and the consequences of doing so under *People v. Curtis, supra.* When asked if he understood the advisement, defendant responded affirmatively. The trial court then asked defendant: "Do you wish to testify or not to testify?" Defendant responded by saying that he would stand on the assertions he had made in a previously filed affidavit, in which he stated that he did not want to appear at trial or to testify because, among other things, he would be forced to wear the stun belt.

When the court stated that it would consider that response as a decision not to testify, defendant made no objection. Indeed, defendant has not alleged that the trial court, his counsel, or anyone else prevented him from testifying, nor did he file a post-trial motion asserting that his desire to testify had been thwarted. *See Tyler v. People, supra.* To the extent that defendant contends the trial court's adverse rulings on physical restraints prevented him from testifying, we reject that argument. *See People v. Brewer,* 720 P.2d 596 (Colo.App.1985) (since an accused's decision not to testify seldom turns on a single factor, court cannot assume that an adverse ruling motivated defendant's decision).

VII. Motions for Expanded Discovery

Next, defendant contends that the trial court violated his right to due process and fundamental fairness by refusing to order certain witnesses to speak with defense counsel or to submit to depositions. We disagree.

A.

■ Defendant first asserts that because two of the witnesses were former law en-

forcement officials who had investigated the case in 1974, the prosecution had a duty to instruct them to speak with defense counsel and the trial court had a duty to ensure this compliance. We disagree.

Because this specific issue was not raised before the trial court, we apply a plain error standard of review. *See Wilson v. People,* 743 P.2d 415 (Colo.1987); Crim. P. 52(b).

We are not aware of, and defendant has not cited, any authority for the proposition that a trial court can or should compel witnesses to speak with defense counsel because of their former status as law enforcement officers. Indeed, witnesses have a choice whether to speak with counsel, except to the limited extent depositions may be permitted under Crim. P. 15. *See People v. Antunes,* 680 P.2d 1321 (Colo.App.1984),

Moreover, Crim. P. 16(III)(a) states only that: "[N]either the prosecuting attorney, the defense counsel, nor other prosecution or defense personnel shall advise persons having relevant material or information ... to refrain from discussing the case with opposing counsel ... nor shall they impede the investigation of the case." Thus, although the trial court was under no duty to compel the witnesses to speak with defense counsel, it granted defendant's motion to direct the prosecution to advise witnesses of the basic elements of this rule.

Additionally, the record reveals that the trial court permitted defendant to engage in expanded cross-examination of the witnesses at several pre-trial proceedings. Thus, we conclude that the fundamental fairness of the trial was not affected by the court's ruling, and therefore, no plain error resulted.

B.

■ Defendant also asserts that the trial court erred in refusing to order the former law enforcement officers to submit to depositions. We do not agree.

Generally, depositions are not allowed in criminal proceedings. However, Crim. P. 15 states that depositions will be allowed when it is shown by affidavit that a prospective witness may be unable to attend a proceed-

ing and that a deposition is necessary to prevent injustice.

Here, defendant filed a motion for expanded discovery in the form of depositions but did not allege that any of the witnesses would be unable to attend trial. Accordingly, the trial court denied the motion, although, as noted above, the court indicated that it would allow expanded questioning of those witnesses during pretrial hearings.

Because there was no showing that the prospective witnesses would be unavailable at trial, we conclude that the trial court did not err in denying defendant's motion for expanded discovery in the form of depositions. *Cf. People v. Hernandez*, 899 P.2d 297 (Colo.App.1995) (under Crim. P. 15(a), a trial court is entrusted with a great degree of discretion in determining whether to allow taking of deposition testimony).

## VIII. Exclusion/Admission of Testimony

Next, defendant maintains that the trial court abused its discretion in excluding or admitting the statements of various witnesses during trial. We are not persuaded.

Trial courts are accorded considerable discretion in deciding questions concerning the admissibility of evidence and have broad discretion to determine the relevancy, probative value, and prejudicial impact of evidence. A trial court's evidentiary rulings will not be disturbed unless manifestly arbitrary, unreasonable, or unfair. *People v. Ibarra*, 849 P.2d 33 (Colo.1993).

### A.

■ First, defendant asserts that the trial court erred in refusing to allow a former Gunnison County deputy sheriff to testify about statements allegedly made by a man to three girls in 1974 that the victim and her boyfriend had eloped and would soon return. Defendant also asserts that the trial court erred by refusing to allow cross-examination of various witnesses concerning their failure to investigate this information. We perceive no error.

Here, defendant sought to present the statements to show that the investigation by the sheriff's department was deficient. How-

ever, the deputy testified at a motions hearing that he had never met the man in question, had tried without success to locate him, and had never spoken with the three girls.

We conclude that the trial court acted within its discretion by excluding the testimony at issue. Indeed, the trial court had fully explored defendant's contentions regarding the deficiency of the sheriff's investigation in connection with the defendant's motion to dismiss based upon the delay in prosecution.

■ Finally, in light of the testimony by the deputy that he had actually searched for the man in question without success, the trial court's decision to limit the cross-examination of the law enforcement officials concerning their alleged failure to investigate did not violate defendant's rights.

### B.

■ Next, defendant asserts that the trial court abused its discretion by excluding written statements made in 1974 by two Spanish shepherds who had been working in Gunnison and who, according to the statements, had seen the victim alive two days after the prosecution alleged that she had been murdered. Defendant asserts these statements were admissible as statements against penal interest because they implicated the shepherds. We disagree.

Contrary to defendant's contention, the shepherds' statements did not contain any information that tended to subject them to civil or criminal liability such that a reasonable person in that position would not have made the statement unless he or she believed it to be true. *See* CRE 804(b)(3). Hence, they did not fall under the exception to the hearsay rule and were properly excluded.

### C.

■ We also find no abuse of discretion in allowing the prosecution to have the hearsay statements of three deceased witnesses read into the record under the residual hearsay exception, CRE 803(b)(5).

The record reveals that, with respect to two of the witnesses, all parties agreed as to which portions of those statements would be read into the record. Thus, there is no basis for defendant's contentions with respect to these statements.

With respect to the third witness, the trial court considered his statements and concluded that they were trustworthy, material, would give the jury a complete picture concerning the defendant's travels shortly after the victim's disappearance, and that the interests of justice would best be served by their admission. In so ruling, the trial court did not abuse its discretion.

### D.

Defendant also maintains that the trial court abused its discretion in permitting a former Gunnison County undersheriff to testify that he believed certain testimony of a jailhouse informant. Again, we find no reversible error.

■■■ The prosecution may not express a belief in a witness' testimony or elicit testimony as to the truth or falsehood of a witness' testimony. *People v. Jones*, 832 P.2d 1036 (Colo.App.1991).

Here, however, the trial court did not permit the undersheriff to express an opinion that the jailhouse informant was telling the truth because it sustained defendant's objection on that basis. Further, after the undersheriff gave a nonresponsive answer expressing his view that the informant was telling the truth, the court gave a curative instruction. *See People v. Carrier*, 791 P.2d 1204 (Colo.App.1990) (jury is presumed to follow curative instructions).

### IX. Limitation of Cross–Examination

■■■ Next, defendant contends that the trial court abused its discretion in limiting his cross-examination of the jailhouse informant with respect to whether he was on federal probation at the time of trial. We perceive no error.

■■■ Although probationary status of a prosecution witness may be relevant to such witness' bias or motive for testifying, *People*

*v. Bowman*, 669 P.2d 1369 (Colo.1983), a trial court has wide latitude to limit cross-examination based upon concerns about harassment, prejudice, confusion of the issues, safety of the witness, or repetitive or marginally relevant interrogation. *Merritt v. People*, 842 P.2d 162 (Colo.1992).

Here, following extensive cross-examination about the witness' prior felony convictions, the trial court ruled that defense counsel could not inquire about the witness' current probation status, but that he could ask whether the witness expected to receive any benefit from testifying.

We conclude that this minor limitation of cross-examination was within the trial court's discretion. Indeed, because the witness was on probation in the state of Washington, Colorado prosecutors had no authority or ability to affect the witness' probation status. *See United States v. Ellzey*, 936 F.2d 492 (10th Cir.), *cert. denied*, 502 U.S. 950, 112 S.Ct. 400, 116 L.Ed.2d 350 (1991).

### X. Jury Instruction

■■■ Defendant next asserts that the trial court's instruction as to "cause" was erroneous because the instruction it gave should be limited only to issues of proximate cause in conjunction with vehicular homicide cases.

However, defendant does not allege any prejudice resulted from the giving of this instruction. Consequently, any error was harmless. *See* Crim. P. 52(a).

### XI. Remains of Victim in Jury Room

■■■ Finally, we reject defendant's contention that the trial court committed reversible error by permitting the jury to take the remains of the victim into the jury room for deliberation.

■■■■ Evidence that may tend to incite the passion and prejudice of the jury will not be admitted, *see People v. Pearson*, 190 Colo. 313, 546 P.2d 1259 (Colo.1976). However, exclusion of relevant evidence is only required where it is unfairly prejudicial such that it would cause the jury to render a decision on an improper basis, such as anger or shock. *People v. Salas*, 902 P.2d 398

(Colo.App.1994). Further, subject to exceptions not applicable here, all exhibits which have been admitted into evidence may be used by the jury during its deliberations. *Wilson v. People,* 103 Colo. 150, 84 P.2d 463 (1938); *People v. Coca,* 40 Colo.App. 440, 580 P.2d 1258 (1978) (citing C.R.C.P. 47(m)); *cf. People v. Montoya,* 773 P.2d 623 (Colo.App. 1989).

Here, although defendant objected to the remains being admitted as evidence, he did not later object to those remains going into the jury room, nor did he tender any limiting instruction as to the jury's access to the remains during its deliberations. *See People v. Coca, supra,* at 1260 n. 1.

Thus, applying a plain error standard of review, *see Wilson v. People, supra,* we conclude that allowing the remains to be taken to the jury room was not reversible error.

The judgment is affirmed.

DAVIDSON and BRIGGS, JJ., concur.